

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

In re

DEAN J. ZANETOS,

Debtor(s).

Case No: SA 05-48272 TA

Chapter 11

**AMENDED MEMORANDUM OF DECISION**

Date: June 21, 2006
Time: 10:00 a.m.
Place: Courtroom 5B

Creditor Wayne Hagendorf ("Hagendorf") filed a motion under 11 U.S.C. §506 to value the real property and improvements commonly known as 3170 Hollyridge Drive, Hollywood, CA. ("the property"). The property is the Debtor's residence and is also the primary asset of the estate. The Debtor has filed this adversary proceeding under 11 U.S.C. §547 to recover as alleged preferences certain monies levied upon by Hagendorf and the judgment lien Hagendorf recorded against the property on or near June 17, 2005. In addition to the valuation motion, Hagendorf has filed in this adversary proceeding his Motion for Judgment on Partial Findings. The valuation motion and the Motion for Judgment on Partial Findings are all directed to establishing that the

1

elements of a preference, i.e., that the Debtor was insolvent when the transfer was made (June 17, 2005) and that the defendant Hagendorf would receive more by reason of the transfer than would be enjoyed in a hypothetical liquidation, are absent in this case. See 11 U.S.C. §547(b)(3) and (b)(5), respectively. Hagendorf's valuation motion is also directed to the issue of valuation as it might arise in context of confirmation of a plan, i.e. that the plan be "fair and equitable" with respect to any dissenting class of secured or unsecured creditors (See 11 U.S.C.§1129(b)(2)(A) and (B)) or that the "best interests test" is satisfied as to any dissenting class, i.e. that at least as much is obtained under the plan as would be received in a liquidation. See 11 U.S.C. §1129(a)(7)(A)(ii).

In order to fully respond to the various purposes of these motions it is necessary for the Court to render valuations on at least two and perhaps three different dates. Those dates are the date of the transfers, June 17, 2005, the date of the petition, September 7, 2005, and possibly the effective date of the plan, which would be approximately end of August, 2006, although the Court is inclined to follow the teaching of cases such as *In re Tenna Corp.*, 801 F. 2d 819 (6th Cir. 1986) to the effect that the debtor must bear the burden of any post petition decline as concerns his solvency. This would make the relevant dates June 17, 2005 and September 7, 2005. Since confirmation might involve the issue of returns to creditors aside from whether the Debtor was ever "solvent", the Court will also render a finding of value as of the date of this opinion as the closest possible date to the date of any hypothetical recovery in a Chapter 7 liquidation for the "best interests of creditors" test.

The Court has reviewed the reports of the three appraisers and each of their testimonies. The Court found that all three were competent as experts and has judged that each of them was earnest and forthright in their opinions. Although there is a discrepancy between their respective

2

opinions of the property's value, the magnitude of discrepancy between the opinions of Messrs. Freedman as of April, 2006 and Foster as of October, 2005 is still within tolerable range. The Court is very mindful that throughout 2004 and well into 2005 there was a precipitous rise in real property values throughout Southern California, which began to cool in late 2005 and has leveled off in 2006. Therefore, for example, the discrepancy between the Freedman valuation as of April 12, 2006 at $1,072,000 and the Foster valuation as of October 16, 2005 at $1,100,000 is within a 2.5 percent range. The discrepancy might still be within a similar range depending on how much one rolls back, if at all, for the intervening approximate 6 months between the April report and the petition date. This may in turn depend upon when one believes the "cool down" started. However, for reasons explained below, the Court believes the discrepancy between the two appraisals when adjusted for the date of the petition is still relatively small. The facts of this case require the Court to extrapolate from the data its valuations at dates close to, but not precisely on, any of the report dates.

Debtor argues that his appraiser was more careful to make adjustments for certain lack of amenities in the subject as compared to the comparables. Debtor's appraiser also had the advantage of actually viewing the interior of the subject property. While this may be true there was also one item of data that Mr. Freedman did not choose to include in his June 2, 2005 appraisal, which omission the court found troubling. This was comparison sale #3 from his April 12 report, commonly known as 3204 Beachwood Drive, Los Angeles. According to the report the closing date was July 1, 2005, *only 13 days after the target date of June 17*. This property is reportedly only .39 miles from the subject. The adjusted sale price on comparable sale #3, taking into account all of the adjustments Mr. Freedman thought appropriate, came out at $1,098,000. The Court

3

heard Mr. Freedman's testimony that he chose not to include this data because of some arbitrary cutoff date which allegedly was appropriate in performing retrospective appraisals. The Court did not find this limitation either logical or persuasive. The Court, in contrast, found this the single closest sale in terms of proximity of date to any of the comparables.

Certainly Mr. Freedman was correct that one must still average the values from all of the comparables, which if done, he says, boosts his opinion as of June 2, 2005 to an admitted $920,000. While Mr. Freedman does not tell us how the revised averaging was conducted, the Court notes that from Mr. Freedman's April 12 report he had assigned a *40% weighting to this comparable #3* because it was among the "least adjusted" and of "the most similar overall view-type..." See page 6 of 18, page bottom, April 12 report. The Court concludes from this that Mr. Freedman found 3204 Beachwood a very similar property. If one performs an averaging recalculation using the same 40% weighting to 3204 Beachwood, and then retains the other two most weighted comparables from the June 2 report (i.e. 3133 Hollyridge, $976,220 adjusted and 2887 Hollyridge, $887,336 adjusted ) at Mr. Freedman's assigned weight of 30% each, (but one discards those other comparables described as "secondary" and "tertiary") the resulting valuation by the Court's calculation is $998,266 as of June 2, 2005. The Court is also mindful that the target date is actually June 17, not June 2. Therefore, this two week period is not insignificant since this June period was still during the peak of the hot increases and bidding wars, and before the cool down had started. The Court notes that the majority of comparable sales from the June report, as well as the comparables from the April report, *sold at or above listing*. Therefore, even if the Court gives minimal credence to the opinions of the other two appraisers there is reason enough to

adjust Mr. Freedman's earlier valuation using his own numbers and analysis. **The Court finds that the property as of June 17, 2005 had a fair market value of $1,000,000.**

Now the Court must also find a value as of the petition date, September 7, 2005. The closest valuation date is that of Mr. Foster at October 16, 2005 in the amount of $1,100,000. The difference between his valuation and that of Mr. Freedman as of April, 2006 is only $28,000. This is so close as to be statistically insignificant and is persuasive as an indication of value on the petition date *unless* one believes there was a significant upward change in the value trend between September, 2005 and April, 2006 *and that this is somehow reflected in Mr. Freedman's April report*. There is no evidence before the Court that there was any decrease in values between these two dates. There is some indication from Mr. Pohls' opinion that values were still rising in early 2006. The Court also notes that the nearly adjacent property, 3132 Hollyridge, was a bona fide sale at $1,695,000 in 2006. If this price is adjusted downward by a 10% view premium as Mr. Freedman suggested, and an $80,000 adjustment downward for site and a pool as Mr. Foster's report suggests, this would yield a comparable at about $1,450,000. However, the Court notes that the comparable sales chosen by Mr. Freedman for his April report were all dated in either July or early November of 2005, *dates closer to the petition date than to his report date*. The Court gave some weight to the Pohls valuation for purposes of value as of the petition date, but notes that his valuation date of May 6, 2006 at $1,350,000, was the highest of all the valuations but separated by eight months from the Foster valuation. However, if one makes some downward adjustment in respect of the still rising market in the eight months since the petition date, say of 15% (half of the supposed annual rate of 30% appreciation for 2005) then all three appraisers are at virtually the same number in September, 2005. Since Mr. Freedman relied upon comparable sales from

November and July, 2005, the Court feels comfortable in concluding no adjustment is needed in Mr. Freedman's number for the period between the Freedman April 12 report and the Foster October 16 report. With these thoughts in mind we have for October, 2005 the following: Foster - $1,100,000; Freedman - $1,072,000; and Pohls - $1,147,500 (adjusted downward for half a year's appreciation). The opinions of the three appraisers were nearly identical for all practical purposes. The arithmetic average is $1,106,500. Therefore, because the target date was actually about five weeks earlier and the Freedman and Foster valuations should be slightly more weighted given their relative proximity to the target date, the Court finds that the **fair market value of the property as of September 7, 2005 was $1,075,000.**

Lastly, the Court is asked to find a value to coincide with a probable effective date of the Debtor's plan. The closest valuation date is that of Mr. Pohls, May 6, 2006, but the Court found his to be the most cursory of the three analyses. On the other hand, his comparable sales were all in either late 2005 or early 2006, closer in time to the present than were Mr. Freedman's comparable sales from his April report. The court will utilize the Pohls report and valuation at $1,350,000, and the adjusted sales price of 3132 Hollyridge in 2006 ($1,455,500) primarily as a general indication that price increases may have slowed from the petition date but valuations have certainly not collapsed. The Court finds that the **fair market value at present of the property is at least $1,100,000.**

There remains under the Motion for Judgment on Partial Findings the problem of evaluating whether the Debtor was solvent within the meaning of 11 U.S.C. §547 as of the date of the transfer, June 17, 2005. Very little evidence is presented on any issue other than the property and the argument about the appropriate amount of exemptions. However, assuming that the

secured debt against the property is/was indeed $612,000, as Debtor now claims, and assuming that the remaining debt is/was $404,406 as the schedules show, this would amount to a total of $1,016,406 in debt. Against this must be weighed $112,916 [or is it $124,916?] in personal property shown on the schedules and $1,000,000 in real property as determined herein, less $98,996 of claimed exemptions, for a total adjusted asset value of $1,025,920. This analysis suggests that **the Debtor was solvent at the time of the transfer within the meaning of 11 U.S.C.§547.** Hagendorf has overcome the presumption of 11 U.S.C. §547(f) and these will be the findings of the Court. This leaves the Debtor unable to prove one of the elements of his preference action, and so judgment is appropriate for Hagendorf.

In order to deal with the issue of whether creditors would get at least as much under the plan as under a hypothetical liquidation, the so-called "best interests of creditors" test, the Court believes for <u>un</u>secured creditors it is appropriate to make an 8% adjustment, at least, for costs of sale of the property. This means that an $88,000 adjustment would be appropriate from the present fair market value of the property [$1,012,000], but this would not affect Hagendorf since his lien is not avoidable as a preference and he is a *fully secured* creditor with respect to the property by reason of his judgment lien.

Consequently, any plan not consented to by Hagendorf must provide for his payment in full to pass muster  To the extent that the property is not to be sold but payment is to be made over time, an appropriate adjustment upward on account of interest must also be made so that Hagendorf receives not less than the present value of his current lien on the property [See 11 U.S.C. §1129(b)(2)(A)(i)(I) and (II)] <u>or</u> he must otherwise receive the "indubitable equivalent" of his interest in the property. See §1129(b)(2)(A)(iii)

Regarding unsecured creditors, even after the $88,000 is deducted from the present value of the property for costs of sale it appears that the adjusted value of all assets [$1,025,914] is still greater than all debt [$1,016,406], which strongly suggests that unsecured creditors would also need to be paid in full under the plan unless they vote for other treatment. See, 11 U.S.C. § 1129(a)(7). It is possible that a greater adjustment for liquidation costs in Chapter 7 is appropriate, which combined with accrued administrative costs might slightly change this result. However, that is beyond the scope of this opinion.

*Counsel for Hagendorf is directed to prepare an order and findings consistent with this opinion.*

DATED: JUL 14 2006

HONORABLE THEODOR C. ALBERT
United States Bankruptcy Judge

# NOTICE OF ENTRY OF JUDGMENT OR ORDER

## AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW:

You are hereby notified that a judgment or order entitled: AMENDED MEMORANDUM OF DECISION was entered on **JUL 14 2006**.

I hereby certify that I mailed a true copy of the order or judgment to the persons and entities listed below on **JUL 14 2006**.

Jayne T. Kaplan
The Law Offices of Jayne T. Kaplan
1112 Fair Oaks Avenue
South Pasadena, CA 91030

Christopher L. Blank
Christopher L. Blank, Attorney at Law, PC
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660

Richard J. Radcliffe
Beth Kuttler
Reich Radcliffe, LLP
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660

DATED **JUL 14 2006**

By _____
   Clerk